IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHECKERBOARD INTELLECTUAL PROPERTY, LLC, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 17-219-LPS-CJB |
| v. | ) ) | |
| CAFEPRESS INC., | ) ) | |
| Defendant. | ) ) | |
| CHECKERBOARD INTELLECTUAL PROPERTY, LLC, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 17-220-LPS-CJB |
| v. | ) ) | |
| CIMPRESS USA INC., | ) ) | |
| Defendant. | ) ) | |
| CHECKERBOARD INTELLECTUAL PROPERTY, LLC, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 17-221-LPS-CJB |
| v. | ) ) | |
| CUSTOMINK, LLC, | ) ) | |
| Defendant. | ) ) | |
| CHECKERBOARD INTELLECTUAL PROPERTY, LLC, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 17-222-LPS-CJB |
| v. | ) ) | |
| OFFICE DEPOT, INC., | ) ) | |
| Defendant. | ) | |

**OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) OF DEFENDANTS**

Steven T. Margolin (#3110)
Brittany M. Giusini (#6034)
GREENBERG TRAURIG, LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
(302) 661-7000
margolins@gtlaw.com
giusinib@gtlaw.com

*Attorneys for Defendant CafePress Inc.*


*Of Counsel:*

Joshua L. Raskin
GREENBERG TRAURIG, LLP
200 Park Avenue, MetLife Building
New York, NY 10166
(212) 801-9200
raskinj@gtlaw.com

Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for Defendant Cimpress USA Inc.*


*Of Counsel:*

Thomas L. Duston
Tron Y. Fu
Tiffany Gehrke
MARSHALL, GERSTEIN AND BORUN LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606-6357
(312) 474-6300
tduston@marshallip.com
tfu@marshallip.com
tgehrke@marshallip.com

John G. Day (#2403)
Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for Defendant CustomInk, LLC*


*Of Counsel:*

Jordan A. Sigale
Julie Oseland
Julie L. Langdon
DUNLAP CODDING PC
225 West Washington Street, Suite 2200
Chicago, IL 60606
(312) 651-6744
jsigale@dunlapcodding.com
joseland@dunlapcodding.com
jlangdon@dunlapcodding.com

Christopher Viceconte (#5568)
GIBBONS P.C.
300 Delaware Avenue, Suite 1015
Wilmington, DE 19801
(302) 518-6322
cviceconte@gibbonslaw.com

*Attorneys for Defendant Office Depot, Inc.*


*Of Counsel:*

Charles H. Chevalier
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102
(973) 596-4611
cchevalier@gibbonslaw.com

Dated: May 26, 2017

# TABLE OF CONTENTS

**INTRODUCTION**.................................................................................................................. 1

**LEGAL STANDARD** ........................................................................................................... 1

**SUMMARY OF THE ARGUMENT** ................................................................................... 3

**STATEMENT OF FACTS**.................................................................................................... 5

**ARGUMENT** ......................................................................................................................... 8

    I.    Checkerboard's Claims Are Directed to the Abstract Idea of Proofing a Draft of a Printed Article to Be Mass Printed.................................................................................. 8

    II.   Checkerboard's Claims Lack A Inventive Concept To Transform the Abstract Idea Into a Patent-Eligible Invention ......................................................................................... 10

**CONCLUSION** .................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Affinity Labs of Texas, LLC v. DIRECTV, LLC,*
  838 F.3d 1253 (Fed. Cir. 2016) .............................................................. 18

*Alice Corp. Pty. Ltd. v. CLS Bank International,*
  134 S. Ct. 2347 (2014) ................................................................. 13, 14

*Apple, Inc. v. Ameranth, Inc.,*
  842 F.3d 1229 (Fed. Cir. 2016) ........................................................ 9, 14

*Bilski v. Kappos,*
  561 U.S. 593 (2010) ............................................................................. 7

*buySAFE, Inc. v. Google, Inc.,*
  765 F.3d 1350 (Fed. Cir. 2014) .................................................. 8, 17, 19

*Content Extraction & Transmission LLC v. Wells Fargo Bank Nat'l Ass'n,*
  776 F.3d 1343 (Fed. Cir. 2014) ........................................................ 7, 18

*Data Engine Tech., LLC  v. Google, Inc.,*
  211 F.Supp.3d 669 (D. Del. 2016) ..................................................... 8, 9

*DDR Holdings, LLC v. Hotels.com L.P.,*
  773 F.3d 1245 (Fed. Cir. 2014) ...................................................... 18, 19

*Elec. Power Grp., LLC v. Alstom S.A.,*
  830 F.3d 1350 (Fed. Cir. 2016) .................................................. 9, 15, 18

*Enfish, LLC v. Microsoft Corp.,*
  822 F.3d 1327 (Fed. Cir. 2016) ...................................................... 18, 19

*Gametek LLC v. Zynga, Inc.,*
  Nos. 13-2546, 13-3089, 13-3472, 13-3493, 2014 WL 1665090 (N.D. Cal. Apr. 25, 2014) ....... 8

*Gottschalk v. Benson,*
  409 U.S. 63 (1972) ............................................................................. 13

*In re BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig.*,
    774 F.3d 755 (Fed. Cir. 2014) ................................................................... 7

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015) ............................................................... 17

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017) ............................................................... 15

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016) ................................................................. 9

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 .......................................................................................... 17

*Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016) ............................................................... 15

*Kaavo Inc. v. Cognizant Tech. Solutions Corp.*,
    2016 WL 476730 (D. Del. Feb. 5, 2016) ............................................... 8, 9

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    566 U.S. 66 (2012) ...................................................................... 13, 15, 18

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016) ............................................................... 14

*Nami v. Fauver*,
    82 F.3d 63 (3d Cir. 1996) .......................................................................... 7

*Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*,
    2014 WL 4675316 (D. Del. Sept. 19, 2014) ............................................. 7

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015) ................................................................. 7

*ReefEdge Networks, LLC v. Juniper Networks, Inc.*,
    29 F. Supp. 3d 455 (D. Del. 2014) ............................................................ 6

*Sound View Innovations, LLC v. Facebook,*
 204 F. Supp. 3d 655 (D. Del. 2016) ........................................................................ 7

*Ultramercial v. Hulu, LLC,*
 772 F.3d 709 (Fed. Cir. 2014) .................................................................................. 7

## **STATUTES**

35 U.S.C. § 101 ....................................................................................................... 7, 8, 21

## **RULES**

Federal Rule of Civil Procedure 12(b) ................................................................ 1, 6, 7, 8

# INTRODUCTION

CafePress, Inc., Cimpress USA, Inc., CustomInk, LLC, and Office Depot, Inc. (individually a "Defendant" and collectively, the "Defendants") each file this Opening Brief In Support of its Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). Their cases each involve a single patent, U.S. Patent No. 6,529,214 (the "'214 Patent") allegedly owned by Plaintiff Checkerboard Intellectual Property ("Checkerboard"). All of the asserted claims of the '214 Patent are directed to patent-ineligible subject matter under 35 U.S.C. § 101 and as a result are invalid. Those claims encompass nothing more than the abstract idea of showing someone who is designing a printed article, such as a business card or wedding invitation, what that article will look like when printed. The claims do not recite accomplishing this result using anything other than generic computer components to (a) receive information, (b) process the received information, and (c) display that processed information. Checkerboard's self-evident, purported "novel" improvement—to display the *same* information used to print the article—is not "an inventive concept" sufficient to render these claims patent-eligible. Because Checkerboard's '214 Patent is directed to patent ineligible subject matter, it has failed to state a claim upon which relief can be granted. Accordingly, the Court should dismiss this action under Federal Rule of Civil Procedure 12(b)(6).

# LEGAL STANDARD

Federal Rule of Civil Procedure 12(b) requires dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In evaluating a motion to dismiss under Rule 12(b)(6), the court "'accept[s] as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom.'" *ReefEdge Networks, LLC*

*v. Juniper Networks, Inc.*, 29 F. Supp. 3d 455, 457 (D. Del. 2014) (quoting *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996)).

The Court performs a two-part analysis when presented with a Rule 12(b)(6) motion. "First, the court separates the factual and legal elements of a claim, accepting all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*, 2014 WL 4675316, at *2 (D. Del. Sept. 19, 2014) (citations and internal quotation marks omitted). "Second, the court determines whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Id.* (citations and internal quotation marks omitted).

Patent eligibility under 35 U.S.C. § 101 is a question of law well suited for resolution on a motion to dismiss. *Sound View Innovations, LLC v. Facebook*, 204 F. Supp. 3d 655, 660 (D. Del. 2016) (citing *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015); *Content Extraction & Transmission LLC v. Wells Fargo Bank Nat'l Ass'n*, 776 F.3d 1343, 1346 (Fed. Cir. 2014), *cert denied,* --- U.S. ---, 136 S.Ct. 119 (2015)). Section 101 presents a "threshold test," *Bilski v. Kappos*, 561 U.S. 593, 602 (2010), "that must be addressed at the outset of litigation." *Ultramercial v. Hulu, LLC*, 772 F.3d 709, 718 (Fed. Cir. 2014) (Mayer, J., concurring). Because patent eligibility under Section 101 is a question of law, *see In re BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig.*, 774 F.3d 755, 759 (Fed. Cir. 2014), the Federal Circuit and district courts throughout the country have routinely recognized the propriety of disposing of a case on Section 101 grounds at the pleading stage. *See, e.g.*, *Ultramercial*, 772 F.3d at 711–12 (affirming dismissal of patent claims for a method of monetizing and distributing copyrighted products over the Internet on a Rule 12(b)(6) motion); *Content Extraction & Transmission LLC*, 776 F.3d at 1351 (affirming a Rule 12(b)(6) dismissal of patent claims over a

method of recognizing and storing data); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1351 (Fed. Cir. 2014) (affirming the district court's grant of motion for judgment on the pleadings that the asserted claims covered ineligible subject matter under Section 101); *Data Engine Tech., LLC v. Google, Inc.*, 211 F.Supp.3d 669, 679 (D. Del. 2016) (J. Stark) (granting a Rule 12(b)(6) motion because the claims covered ineligible subject matter under Section 101); *Kaavo Inc. v. Cognizant Tech. Solutions Corp.*, 2016 WL 476730, at *9 (D. Del. Feb. 5, 2016) (J. Burke) (granting a Rule 12(b)(6) motion because the claims were directed to an abstract idea and not patent eligible); *Gametek LLC v. Zynga, Inc.*, Nos. 13-2546, 13-3089, 13-3472, 13-3493, 2014 WL 1665090, at *7 (N.D. Cal. Apr. 25, 2014) (granting motion for judgment on the pleadings under Section 101).

## <u>SUMMARY OF THE ARGUMENT</u>

The '214 Patent does nothing more than recite an abstract idea: displaying a printed design to an end user as it will appear once printed, prior to batch printing it. It claims a well-known, long-practiced process (i.e., displaying a printed article to an end user as it will appear when printed) carried out by generic computer components. The notion of visually proofing a design before it is committed to mass printing is as old as printing itself. The claims fail to recite any elements that individually, or as an ordered combination, transform this abstract idea of merely receiving, processing, and displaying information (i.e., the printed design) using generic computer components into a patent-eligible application of that abstract idea.

Checkerboard's purported advance—using the same information to produce the sample proof as ultimately used to print batches of the design—is a self-evident approach that printers have followed since Johannes Gutenberg first developed moveable-type in the mid-1400s. Most married couples can well recall having to review proofs of wedding invitations created by the

printer using the same plates, ink, and other inputs destined to be used in the eventual batch printing.

Simply computerizing this well-known process, to employ a computer display rather than a physical sample, hardly transforms this abstract idea, at all, let alone transforms it into patent eligible subject matter. Likewise, Checkerboard's claimed use of the *same* digital file to feed both its preview and batch printing, so as to ensure similarity in those outputs, does not differ in any patent-eligible way from the method by which "proofs" have been generated for centuries. The types of generic processes and computer components recited in Checkerboard's patent claims have been rejected, time and again, as not meeting the requirements of Section 101. *See, e.g.*, *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1242-43 (Fed. Cir. 2016) ("adding conventional computer components" to well-known steps is insufficient to add inventive concept); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016) (applying a well-known idea of discarding unwanted mail using generic computer elements even in an Internet environment is insufficient to find inventive concept); *Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350, 1354 (Fed. Cir. 2016) (claiming process of gathering and analyzing specified content to display results, without the use of any particularly asserted inventive technology is patent ineligible); *Data Engine Tech., LLC  v. Google, Inc.*, 211 F.Supp.3d 669, 679 (D. Del. 2016) (J. Stark) (claiming additional elements of using computer components in claims directed to the abstract idea of using tabs to label and organize spreadsheets "do not qualify as inventive concepts"); *Kaavo Inc. v. Cognizant Tech. Solutions Corp.*, 2016 WL 476730, at *9 (D. Del. Feb. 5, 2016) (J. Burke) (reciting the use of generic computing technology to practice the claimed abstract idea are not patent eligible).

## STATEMENT OF FACTS

The '214 Patent entitled "Interactive Print Job Display System and Method" was filed on May 14, 1999 and issued on March 4, 2003. Five years later, on May 12, 2008, Checkerboard sought *ex parte* reexamination of the '214 Patent. An Ex Parte Reexamination Certificate ultimately issued on April 27, 2010. During that reexamination, Checkerboard was forced to amend all of its previously issued claims in response to prior art rejections made by examiners in the Reexamination Unit. Following these amendments, the Reexamination Unit confirmed Claims 1-20, of which independent Claims 1 and 18 are system claims, and independent Claim 14 is a method claim.

The '214 Patent acknowledges that computerized, interactive, pre-press systems existed prior to the claimed invention. (col. 1, lines 12-14)("Modern computer systems with interactive graphics have greatly enhanced the printing process"). However, the '214 Patent noted that these systems often required pre-trained personnel. (col. 1, line 66 to col. 2, line 1).

The applicant noted the newly opened business opportunities, made possible with the advent of the Internet, to extend the professional pre-press systems to do-it-yourself consumers. (col 2 lines 1-7)("[W]ith the advent of the Internet and other network based systems a potential market is available for allowing consumers who wish to purchase custom printed articles such as business cards, wedding invitations, bar mitzvah invitations etc., to interact with an application and produce an order for a printed article with very little human assistance.") But, reiterated that then-available consumer systems failed to display to the consumer an actual, accurate image of the article the consumer had designed. "Typically," according to the applicant, these existing

systems "show standard samples which may only vaguely resemble the resulting customer order." (col. 2, lines 11-12).[1]

The patent applicant's solution to this divergence between displayed and printed articles was simply to produce the displayed image from the *same file* used to produce the printed article:

> The order processing unit 40, upon determining to print the order provides print information 42 to the job processor 34. This print information 42 is the same text and font layout information 32 as provided by the interactive site user interface 30. The same job processor 34 which produces the print images 36 for display to the user during the selection process is the same job processor 34 which produces the output image 44 used in the batch printing process 48. ***By using this same job processor 34, the present invention guarantees that the completed print job will appear exactly the same as the print image 36 which was displayed 45 to the user.***

(col. 4, lines 33-45) (emphasis added). To accomplish its purported solution, the '214 Patent invention employs generic, well-known computing components and commercially available software, described by the '214 Patent as follows:

> [a] user interacts with the system **20** via a display system which commonly includes a monitor **22** with an input device such as a keyboard **24** and pointing device such as mouse **26**. ***This display system is readily available in any typical personal computer or work station***. The user communicates with the interactive site user interface **30** through a communications link **28**. ***This communications link 28 includes any standard communication link*** . . . . As will be discussed hereinafter the illustrative embodiment of the present invention uses the Internet with ***Internet browsing software such as Netscape Navigator*** . . . .

---

[1] The patentee also observed that because of limitations of certain displays, those displays may not be able to "reproduc[e] accurately" the to-be printed design. (col. 1, lines 21-33). For example, where the display "may only display text in black and white . . . [and] [t]herefore if the printing process would use other colors besides black the full effect cannot be shown in the limited graphic display." (col. 1, lines 48-52). Similarly, the patentee observed that "computer displays often use measurements which are not identical [to those used by printers]. . . . [Where] font sizing, points or picas mean different things depending on what the medium is." (col. 1, lines 34-37). The asserted claims, however, are not directed to improvements to display technologies.

(col. 3, lines 50-64) (emphasis added). The interactive web site 30 "provides text, font and layout information 30 [sic:32] to a graphical layout engine 52." (col. 5, lines 11-13). The graphical layout engine is illustratively described as commercially available "Act 1 and Act 2 [software] as produced by Hence EDP of Ventura, Calif," which produced the widely-known Postscript output. (col. 5, lines 28-33). The '214 Patent teaches the use of a "Postscript to graphic converter" implemented using commercially available software called "Image Alchemy." (col. 5, lines 36-47). The "printing process 48 is performed by any standard printing system." (col. 7, lines 12-13).

Checkerboard separately alleges infringement of Claims 1-2 and 4-20 against each Defendant. Independent Claim 1, which is representative, states:

> 1. An interactive image display system for displaying a printed article as it will appear when printed, comprising:
>
> a user interface component, to accept information from a user for producing said printed article, and to display a graphic image representing said printed article to said user;
>
> a graphic layout component, to process said information and to produce a graphic description file based on said information, said graphic description file being the  same file needed for a batch printing process for printing said printed article and for producing said graphic image;
>
> and an image producing component, to process said graphic description file and produce said graphic image based on said graphic description file, said graphic image for display to said user by said user interface component.

Viewed in light of the '214 Patent Specification, this claim teaches a system that utilizes conventional, commercially available computer components to (a) ***receive*** information, (b) ***process*** the received information, and (c) ***display*** that processed information. Independent method Claim 14 adds the use of a "predefined template."  Independent Claim 18 adds storage.

In the end, none of these independent claims disclose more than generic computer components or the use of those generic components in any manner other than that inherent to those generic components; *viz*, the mere manipulation of data to implement the abstract idea of allowing an end user to visually proof a printed design before committing to mass printing of the design. The dependent claims are likewise devoid of limitations that add significantly more.

## ARGUMENT

"Abstract ideas" are not patent-eligible. *Alice Corp. Pty. Ltd. v. CLS Bank International*, 134 S. Ct. 2347, 2354 (2014). It is a "longstanding rule that '[a]n idea of itself is not patentable.'" *Id*. at 2355 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). The "monopolization of [ideas] through the grant of a patent might tend to impede innovation more than it would tend to promote it." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012).

In *Mayo*, the Supreme Court set out a two-step legal framework for distinguishing patents that claim "abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355. The court must first ask whether the claims are directed to a patent-ineligible concept, such as an abstract idea. *Id*. If the claims are directed to a patent-ineligible concept, the court must decide whether the claims add an "inventive concept, i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id*. (citation omitted). That an idea has been implemented using well-known computer components or functions or has been limited to a particular technological environment, is legally insufficient. *Id*. at 2357-59.

## I.      Checkerboard's Claims Are Directed to the Abstract Idea of Proofing a Draft of a Printed Article to Be Mass Printed

Representative Claim 1, shown above, simply recites a system that receives user input, displays a resulting design to the user, and produces a physical copy of that design. Courts distinguish between claims that are directed to "a specific means or method that improves the relevant technology," and those directed simply to "a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *See, e.g.*, *Apple*, 842 F.3d at 1241 (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)).

Notwithstanding its purely-functional, *faux*-components, such as "user interface component," "graphic layout component," "graphic description file," and "image producing component," Claim 1 is directed to nothing more than the abstract of idea of creating a printable design and "proofing" it before printing it. Claim 1 of the '214 Patent recites nothing more than using standard computer components and standard computer functions to display a printed article (e.g., a wedding invitation) by receiving information through a user interface (e.g., using his or her standard Netscape Navigator browser); manipulating that information to create new or modified printed article and further displaying that modified design (again using, e.g., the Netscape browser), having processed the information using off-the-shelf software (e.g., Act 1, Act 2 and Image Alchemy software) before committing to printing the design on the printed article in mass. Thus, the claims of the '214 Patent are directed to the abstract idea of receiving, processing and displaying information (using standard computer components and software) to improve the unclaimed, eventual mass printing of that information (i.e., design).

This is precisely the type of invention the Supreme Court invalidated in *Alice*. *See*, 134 S. Ct. at 2360 (computer-implemented, electronic escrow service patent-ineligible abstract idea). The mere gathering, transmitting, and displaying of information has been declared an unpatentable abstract idea, even where limited to "particular content." *Elec. Power Grp.*, 830

F.3d at 1354 (finding ineligible systems and methods for performing real-time performance monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results). In such cases, "the focus of the claims is not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Id.*

Further "manipulating" data does not render claims to such subject matter any more patent-eligible. *See Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017) (claims "directed to the abstract idea of collecting, displaying, and manipulating data" or "similar data manipulation steps" are ineligible under § 101). In *IV v. Capital One Fin.*, the Federal Circuit found patent ineligible the abstract claims reciting use of a user interface to display a "dynamic document to the user to permit the user to make modifications to the document" and thereafter modifying the XML document pursuant to the user's input. *Id.* at 1339. Checkerboard's '214 Patent claims recite nothing more than the same gathering of information, its display, and modification. Thus, the independent claims of the '214 Patent are directed to an abstract idea under the first prong of the *Alice* framework.

## II.  Checkerboard's Claims Lack A Inventive Concept To Transform the Abstract Idea Into a Patent-Eligible Invention

Analyzing the elements of Checkerboard's claims individually and "as an ordered combination" establishes that the elements do no more than simply recite "well-understood, routine, conventional activity." *Mayo*, 566 U.S. at 79-80. Before claims directed to an abstract idea can be considered patent-eligible, they must disclose a "specific technical solution beyond simply using generic computer concepts in a conventional way." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016). The '214 Patent claims do not include such a solution.

Claim 1 is a system claim containing three components: a user interface component (accepting input and displaying images), a graphic layout component (processing the input into graphic information), and an image producing component (converting the graphic information into a displayable image). No claim is made that these are anything other than well-known, conventional computer components. As noted above, the '214 Patent describes the details of the claimed system more particularly, as follows:

> [a] user interacts with the system 20 via a display system which commonly includes a monitor 22 with an input device such as a keyboard 24 and pointing device such as mouse 26. **This display system is readily available in any typical personal computer or work station.** The user communicates with the interactive site user interface 30 through a communications link 28. **This communications link 28 includes any standard communication link** . . . . As will be discussed hereinafter the illustrative embodiment of the present invention uses the Internet with **Internet browsing software such as Netscape Navigator** . . .

(col. 3, lines 50-64)(emphasis added). The interactive web site 30 "provides text, font and layout information 30 [sic:32] to a graphical layout engine 52." (col. 5, lines 11-13). The graphical layout engine 52 can be implemented by nothing more than the use of pre-existing "Act 1 and Act 2 [software] as produced by Hence EDP of Ventura, Calif," which generates conventional Postscript output. (col. 5, lines 28-33). The '214 Patent further discloses that the Postscript file is converted into a GIF (Graphics Interchange Format) file by the "Postscript to graphic converter" 60, which is implemented by a pre-existing software program called "Image Alchemy," at least in the illustrative embodiment. (col. 5, lines 36-47). Finally, the '214 Patent notes that all of these pieces of pre-existing software may be running on "*a single Pentium® based single or multiple processor system running Microsoft Windows NT®* [or] multiple separate networked computers. . . . *Alternatively, some of the processing, such as user*

*interaction for obtaining information, step 100 FIG. 5, may be performed locally on a user's browser by using Javascript.*" (col. 9, line 66 – col. 10, line 18) (emphasis added).

Thus, the '214 Patent specification makes it abundantly clear that Claim 1 contains no inventive concept rendering it patent eligible. The use of purely conventional technology to implement the elements of a claim does not satisfy the inventive concept requirement. *See*, *e.g.*, *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) (finding an interactive interface limitation is a generic computer element); *buySAFE, Inc.*, 765 F.3d at 1355 (receiving and sending information over a network via a computer is not "even arguably inventive.").

The remaining independent claims fare no better. System Claim 18 is framed in means language that renders it no more expansive than the examples of conventional computer components described in the specification and discussed above. Claim 18's added reference to storing the graphic design file merely incorporates a generic database, and nothing more (*See*, *e.g.*, col. 9, lines 35-39).

Method Claim 14 similarly recites obtaining text information, selecting a predefined template, producing a graphic description file based on said text information and predefined template, and processing said graphic description file into said graphic image for display on a display device. The specification describes that each of these steps employs the use of a well-known computer component or use of the Internet. (*See* col. 3, lines 50 – col. 4, line 20; col. 8, line 24 – col. 9, line 20.) These elements do not render the claim patent-eligible. *See Internet Patents Corp. v. Active Network, Inc.,* 790 F.3d 1343, 1349 (addition of a template did not add an "inventive concept").

In the end, the Independent Claims 1, 14, and 18 of the '214 Patent recite nothing more than an "off-the-shelf, conventional computer, network, and display technology for gathering . . . and presenting the desired information" and thus are not patent eligible. *Elec. Power Grp.*, 830 F.3d at 1355. Instead, the claims only recite the abstract idea of using computer components and functions in conventional ways to allow a user to select and/or create, visualize, modify, and produce its own content for eventual printing, and fail to recite "something sufficient to ensure that the claim amounts to 'significantly more' than the abstract idea itself." *Content Extraction,* 776 F.3d at 1347 (citing *Mayo*, 66 U.S. at 72-73).

The claims of the '214 Patent are unlike the cases where the Federal Circuit has found claims patent eligible because they provided a specific technical solution improving computer functionality itself. For example, the claims of the '214 Patent bear no resemblance to those claims found eligible in *DDR Holdings, LLC v. Hotels.com L.P.*, 773 F.3d 1245 (Fed. Cir. 2014). There, the claims recited a specific series of steps creating an unconventional hybrid webpage that overcame a problem arising specifically in the realm of Internet computing, using a solution necessarily rooted in computer technology. *Id.* at 1257-58. The Federal Circuit determined that the patent claims in *DDR* were distinguishable from patent ineligible claims because the *DDR* claims "specify how interactions with the Internet are manipulated to yield a desired result—a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink." *Id.* at 1257-59; *see also, Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016)(noting that the claims in *DDR* required doing something *to* a webpage, rather than simply doing something *on* a webpage).

Nor do the '214 Patent claims resemble those found patentable in *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016). There, the claims recited a new "self-

referential" data structure and a unique "four-step algorithm" designed to improve computer databases, which were found patent eligible because they constituted an improvement in the functioning of computers, themselves. *Id.* at 1336-37.

The claims in the '214 Patent lack the types of specific technical solutions – i.e., specific interactions, specific algorithms, data structures, and series of steps or interactions – that rendered the claims in *DDR* and *Enfish* to be patent eligible. The claims of the '214 Patent claim nothing more than the abstract idea of receiving, processing, and displaying information. In sum, the Checkerboard '214 Patent claims merely recite a combination of conventional, well-known components to accomplish the abstract idea of designing a printed article via user input and both displaying to the user a preview of, and printing, the printed article using a single graphics file, thereby helping to ensure what the user sees is what the user will get. This is not the type of improvement to a problem involving computer technology that was determined to be patent eligible in *DDR* or *Enfish*.

Nor do the dependent claims of the '214 Patent do not add any inventive steps. The dependent claims provide some additional detail for the various limitations of the independent claims, but do not provide a "specific technical solution." For example, Claims 2 and 4 describe characteristics about the information stored in the interface component, Claims 5, 6, 7, 15 and 16 describe a graphic image having a background, Claim 8 simply recites that the user can modify the font, and Claims 10 and 11 describe a predefined template – none of which is an inventive concept. Claim 13 and 20 merely recite that the system can be interfaced with the internet, which is not "even arguably inventive." *buySAFE*, 765 F.3d at 1355. Claim 17, which depends from method Claim 14, adds nothing more than the step of receiving instructions for printing, including a request for printing and the information to be printed, processing that information,

and producing the graphic file to be used for the printing process. None of these steps add a "specific technical solution." As this process is described in the specification, it reflects no more than the conventional and routine use of computers-- not a "specific technical solution." (*See, e.g.*, col. 6, line 39 – col. 7, line 24.) As such, none of the dependent claims add an inventive concept which is sufficient to render any of the claims patent eligible.

## **CONCLUSION**

Checkerboard's asserted claims in the '214 Patent claim patent-ineligible abstract ideas of receiving, processing, and displaying information with no additional inventive concept. As such, they are invalid under 35 U.S.C. § 101. Accordingly, the Defendants respectfully request that the Court dismiss Checkerboard's Complaint with prejudice.

GREENBERG TRAURIG, LLP                    ASHBY & GEDDES

/s/ Steven T. Margolin                    /s/ Andrew C. Mayo
_____           _____
Steven T. Margolin (#3110)                Steven J. Balick (#2114)
Brittany M. Giusini (#6034)               Andrew C. Mayo (#5207)
The Nemours Building                      500 Delaware Avenue, 8th Floor
1007 North Orange Street, Suite 1200      P.O. Box 1150
Wilmington, DE 19801                      Wilmington, DE 19899
(302) 661-7000                            (302) 654-1888
margolins@gtlaw.com                       sbalick@ashby-geddes.com
giusinib@gtlaw.com                        amayo@ashby-geddes.com

*Attorneys for Defendant CafePress Inc.*  *Attorneys for Defendant Cimpress USA Inc.*


*Of Counsel:*                             *Of Counsel:*

Joshua L. Raskin                          Thomas L. Duston
GREENBERG TRAURIG, LLP                     Tron Y. Fu
200 Park Avenue, MetLife Building         Tiffany Gehrke
New York, NY 10166                        MARSHALL, GERSTEIN AND BORUN LLP
(212) 801-9200                            233 South Wacker Drive
raskinj@gtlaw.com                         6300 Willis Tower
                                          Chicago, IL 60606-6357
                                          (312) 474-6300
                                          tduston@marshallip.com
                                          tfu@marshallip.com
                                          tgehrke@marshallip.com

ASHBY & GEDDES

/s/ *Andrew C. Mayo*

_____

John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for Defendant CustomInk, LLC*


*Of Counsel:*

Jordan A. Sigale
Julie Oseland
Julie L. Langdon
DUNLAP CODDING PC
225 West Washington Street, Suite 2200
Chicago, IL 60606
(312) 651-6744
jsigale@dunlapcodding.com
joseland@dunlapcodding.com
jlangdon@dunlapcodding.com

Dated: May 26, 2017

GIBBONS P.C.

/s/ *Christopher Viceconte*

_____

Christopher Viceconte (#5568)
300 Delaware Avenue, Suite 1015
Wilmington, DE 19801
(302) 518-6322
cviceconte@gibbonslaw.com

*Attorneys for Defendant Office Depot, Inc.*


*Of Counsel:*

Charles H. Chevalier
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102
(973) 596-4611
cchevalier@gibbonslaw.com